TILDEN and others *vs.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK.

It is perfectly settled that if a tax or assessment be void upon its face, or if the proof necessary to enforce it will show its invalidity, a bill in equity to restrain its collection cannot be sustained.  *Allen* v. *The City of Buffalo,* (39 *N. Y. Rep.* 386,) contains nothing in opposition to, or inconsistent with, this doctrine.

The decision in that case was based upon a special provision in the charter of the city of Buffalo, and has no application to cases arising in the city of New York, where no such provision of law, in respect to assessments, exists.

The corporation ordinance of 1824, by which it was provided that if a street in the city of New York should 'be once paved at the expense of individual owners, it should forever thereafter be repaved and repaired at the expense of the corporation, provided the pavement was not a wooden pavement, did not constitute such a case of contract between the city and the owners of lots on Pearl street as to prevent the city from enforcing an assessment for paving said street with Nicholson pavement.

If any such contract existed, it lacked one essential element of a valid agreement; viz., a consideration.

Under the provisions of the act of 1813, chapter 86, authorizing the mayor &c. of the city of New York to direct the paving of streets, and to assess the expense upon the owners or occupants of the houses and lots benefited, the owners could have been compelled to pay the expense of a pavement laid down in 1824; and therefore the promise of the corporation to bear the expense of future repairs and pavements was without consideration.

The performance of a legal duty, or the payment of a legal liability, furnishes no consideration to support a promise.

APPEAL from a judgment sustaining a demurrer to the complaint.

The plaintiffs, by their complaint, seek to obtain a judgment against the defendants restraining them and their officers from collecting of the plaintiffs certain sums of money assessed (for paving Pearl street with Nicholson pavement) upon the lands and tenements of the plaintiffs, and for a discharge of the liens imposed on the said premises by such assessment, and to restrain the defendants from selling the lands and tenements for the said assessment. The complaint avers that the plaintiffs are the owners of certain lots and houses on Pearl street, on which an aggregate assessment has been laid of $1451.36 for paving Pearl street with Nicholson pavement from Wall to Beekman, under an ordinance of the common council, adopted June 24, 1867. That these premises are incumbered with the liens made by this assessment. That such assessment is illegal and void for these reasons, to wit: It is provided, by statute of 1813, chapter 86, (*Valentine's Digest, p.* 1208,) section 193, that the mayor, aldermen and commonalty of the city of New York, the defendants in this case, shall continue to be commissioners to regulate and keep in repair the roads, highways and streets of the said city. And by section 194 of the same act, it is provided that it shall be lawful for the said commissioners to appoint one or more surveyors or overseers of the said roads and streets, and to employ laborers and workmen to make and keep the said roads and streets in repair. The mayor, aldermen and commonalty of the city of New York, by a general ordinance, adopted in 1824, and readopted from time to time until 1866, provided as follows, viz:

" Chapter XIV. Of paving, repaving and repairing the carriageways of streets and avenues: Sec. 2. Whenever the carriageway of any of the streets in the city of New York, or part of the same, not less than the space or distance between and including the intersection of two streets,

shall be repaired or newly paved, and the crosswalks laid, and the sidewalks extended to the width required by law, at the expense of the individual owners of the lots in the same, and the work approved by the chiefs of bureau having special cognizance thereof, such streets or parts of streets shall forever thereafter be paved, repaired and repaved at the expense of the corporation ; but this section shall not be construed to apply to sidewalks, but to the pavement or carriageway of streets only ; and nothing in this section contained shall be construed to apply to any wooden pavement in said city." (See ordinances adopted by the common council, and published by their authority in 1866, page 227.) That Pearl street, from Wall to Beekman street, has been, in years past, that is to say, on or about the year 1824, paved with cobble stone pavement, at the expense of the owners of the houses and lots fronting on the same, and said pavement was accepted by the corporation, to be kept in repair at the public expense; and has been, from that time until the year 1866, repaired and repaved at the expense of the corporation, and the value of the said houses and lots has been for years past included in the general assessment roll, and has been annually taxed with a proportion of the expense of repairing and repaving the streets of the city generally. Wherefore, the plaintiffs allege they are exempt from any assessment to pay for paving Pearl street with wooden pavement, and that said general ordinance of 1824 is in full force and has not been repealed. The plaintiffs further allege, that since they became the owners of the premises aforesaid, the assessed value of the said premises has been taxed in the general tax levy with a portion of the tax annually imposed, collected and appropriated by the defendants, as follows:

For 1867. For Belgian pavement,  . . . . . $75,000
          " streets, repairing and repaving,  . 130,000
          " improving pavement of Broadway,  390,817

That they have paid to the defendants their proportion of the taxes so levied as aforesaid, and appropriated to be applied by the defendants to paving and repairing of the streets of the city. That by reason of the aforesaid act of 1813, sections 193 and 194, and the aforesaid general ordinance of 1824, the pavement of Pearl street, on or about the year 1824, at the expense of the owners of lots in the same, and the acceptance of said pavement by the corporation, to be kept in repair at the public expense, and the subsequent repairing and repaving of the said street at the expense of the corporation; and the annual taxing of said houses and lots, and the annual payment of said taxes by the plaintiffs (and by the prior owners of said houses and lots) to the defendants, and the annual appropriation of a portion of the taxes so levied and paid, to pay for the expenses of paving the streets of the city of New York, there arises a contract between the plaintiffs and defendants, whereby the defendants promised and contracted that the defendants should and would repave and repair the streets in general, of course including Pearl street, from Wall to Beekman street, in front of the plaintiffs' premises, at the expense of the corporation. And the plaintiffs claim that they are not liable to an assessment for paving Pearl street, from Wall to Beekman street, other than for their proportion of the taxes annually levied and appropriated for "repairing and repaving the streets of the city of New York."

The plaintiffs further allege, that by the statute of April 6, 1837, chapter 160, (*Val. Dig.* 473,) it was provided that all ordinances of the common council of the city of New York shall remain and continue in force until repealed. That the aforesaid general ordinance of 1824 was in full force when the ordinance approved June 24th, 1867, was adopted; which ordinance is as follows:

"Be it ordained, by the mayor, aldermen and commonalty of the city of New York, in common council convened, that Pearl street, from Wall to Beekman street, be paved

with Nicholson pavement, under such directions as shall be given by the Croton Aqueduct Board, who may appoint an inspector thereon, and one of the city surveyors. And whereas, the said mayor, aldermen and commonalty deem it necessary, for the more speedy execution of the said ordinance, to cause the work necessary for the purpose above specified to be executed and done at their own expense, on account of the persons respectively upon whom the same might be assessed :

" Therefore, be it further ordained, that the board of assessors be, and they are hereby directed to make a just and equitable assessment of the expense of conforming to the provisions of this ordinance, among the owners or occupants of all the houses and lots intended to be benefited thereby, in proportion, as nearly as may be, to the advantages which each may be deemed to acquire."

That the above ordinance of June 24th, 1867, did not repeal the aforesaid general ordinance of 1824. That said general ordinance of 1824, section 2, as above quoted, taken in connection with the aforesaid act of April 6, 1837, has all the force and effect of a statute, until the same shall have been repealed. That, therefore, so much of the aforesaid ordinance of June 24th, 1867, as directed an assessment to be made by the board of assessors, is void, because the work, if done at all, should have been done at the expense of the corporation. That the general ordinances of 1866, chapter 8, article 2, section 15, page 188, provide as follows, viz :

" Sec. 15. No contract shall be made, signed or executed, until proposals therefor have been advertised and estimates received and decided upon, as provided by this ordinance, except when otherwise provided by law; nor shall any contract be made, signed or executed for a sum exceeding two hundred and fifty dollars, until all the proposals, estimates, contracts and papers relating thereto shall have been

laid before the common council and confirmed by them, and an appropriation made therefor."

And the same chapter and article, by section 35, page 199, provides as follows:

"Sec. 35. It shall not be lawful for the several departments of the city, and those having charge of expenditures, to make contracts or incur expenditures authorized by the common council to an amount exceeding the several appropriations made, unless an appropriation sufficient to cover such excess shall have been made by the common council."

The statute of 1857, chapter 446, entitled "An act to amend the charter of the city of New York," by section 28, (*Val. Dig.* 276,) provides, that * * "No expense shall be incurred by any of the departments, or officers thereof, whether the object of expenditure shall have been ordered by the common council or not, unless an appropriation shall have been previously made, covering such expense."

That the said general ordinance, chapter 8, was known to be in force by the Croton Aqueduct Board and by the Nicholson Pavement Company, contractors, when the contract for paving Pearl street with Nicholson pavement was made and entered into. Yet, notwithstanding, said contract was made in violation of said ordinance, and also in violation of the aforesaid statute amending the city charter, there not having been "an appropriation made therefor."

That the above cited statute to amend the city charter, by section 38, (*Val. Dig.* 278,) provided, that all contracts shall be founded on sealed bids or proposals made in compliance with public notice, advertised in such newspapers of the city as may be employed by the corporation for the purpose, and all such contracts shall be given to the lowest bidder. And the general ordinances of the common council, reënacted in 1866, by sections 15 to 22, inclusive, pages 188 to 192, prescribe the steps to be taken by the

departments to carry into effect the charter provisions relating to contracts. The 32d section of the aforesaid statute to amend the city charter provides, that until the common council shall, otherwise direct, the existing ordinances shall apply to the departments therein mentioned, so far as the same are applicable thereto, and not inconsistent with that act. That the aforesaid provisions of the city charter and ordinances were in full force when the aforesaid contract with the Nicholson Pavement Company was made and entered into, but that no bids were invited, and none received; and said contract was made and entered into in violation of the above provisions of the charter, and above cited provisions of the general ordinances. Wherefore, the plaintiffs claim that said contract with the Nicholson Pavement Company, for paving Pearl street, from Wall to Beekman street, was void, and that neither the defendants nor the plaintiffs are liable for the expense of paving Pearl street, under said contract, or for any portion of the money claimed or to be claimed by said contractor, for paving Pearl street, under said contract.

That the constitution of the State of New York, by article 8, section 9, (1 *R. S. p.* 69, 5th *ed.,*) provides "that it shall be the duty of the legislature to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent abuses in assessments, and in contracting debt by such municipal corporations." That such duty has been performed by the enactment of various statutes; especially by the act of May 4, 1866, chapter 876, page 2056, entitled "An act to enable the board of supervisors of the county of New York to raise money by tax," &c., the provisions of which are recited.

The plaintiffs further allege, that the aforesaid ordinance, approved June 24, 1867, for paving Pearl street, from Wall to Beekman street, with Nicholson pavement,

"under such directions as shall be given by the Croton Aqueduct Board," on account of the persons, respectively, upon whom the same might be assessed, the pretended contract under it, and the assessment aforesaid, are each and all for a purpose not authorized by the acts of May 4, 1866, and April 23d, 1867, above cited ; but are contrary thereto, and are therefore void, and the plaintiffs are not legally liable to pay the said several sums of money assessed upon their aforesaid premises by the said assessment. That the ordinance, contract and assessment aforesaid are contrary to the statutes of 1866 and 1867, above referred to, in that said statutes provide for taxing the citizens generally, including the plaintiffs, for repaving and repairing streets, and limit the liability of said citizens, for said objects, to the amount authorized by said acts; whereas, the expense of paving Pearl street with Nicholson pavement, under the ordinance of June 24th, 1867, is in excess of, and is not included in, the appropriations made for such object by said acts; also contrary to said act of 1866, section 7, which requires that such work should be done under the direction of the "street commissioner," and, as by said act of 1867, section 1, under direction of the street department; whereas, the ordinance of June 24th, 1866, under which the work in question was done, required that it should be done under the direction of the Croton Aqueduct Board; also contrary to said act of 1866, section 9, and act of 1867, section 4, in that the ordinance of June 24th, 1866, directed the work to be done on account of the persons, respectively, upon whom the same might be assessed, thereby directing an expenditure for a purpose and object other than was provided for by said acts, and contrary to the provisions of said acts. That by the act of 1867, above cited, there was appropriated for the use of the corporation, by section 1, for "Belgian, or other new pavement, $75,000, p. 1597 ;" and for "streets, repaving and repairing, $130,000, p. 1602." And

said act provides as follows, p. 1605, section 4: "The said several sums shall be applied only to the objects and purposes for which the same are hereby appropriated; and neither said corporation, nor any board, department, officer or agent thereof, shall incur any liability, or make any contract or contracts, or permit or vote for, or authorize, directly or indirectly, any expenditure or expenditures for any of the objects and purposes specified, the aggregate of which expenditures, and the liabilities under such contracts, shall exceed the sum appropriated for said purpose, or for any other purpose or object than that herein specified." That the ordinance of June 24th, 1867, (and the contract founded thereon,) are in violation of said provisions of said act, because there is thereby a liability incurred, or purporting to have been incurred, on the part of the corporation, whereby the aggregate of expenditure is thereby made to exceed the sum or sums appropriated for said purposes; and because the aforesaid ordinance directs an assessment to be made to pay for the work, it thereby incurs a liability, and authorizes an expenditure for a purpose other than that specified in said act; wherefore, the plaintiffs claim that said ordinance of June 24th, 1867, is void, and that the contract and assessment founded thereon are void, and that the plaintiffs are not legally bound or obligated thereby. That the result is a fraud upon the statutes above cited and referred to, and a fraud upon the mayor, aldermen and commonalty of the city of New York, and an unlawful and unauthorized lien upon the plaintiffs' aforesaid premises. That Pearl street is one of the main thoroughfares of the lower part of the city, and that the Nicholson pavement recently placed therein is for the benefit of citizens generally who may use the same, and that, therefore, Pearl street should be repaved and repaired, as often as may be necessary, at the expense of the corporation. That the ordinance aforesaid of June 24th, 1867, does not require that the whole expense of the

new pavement shall be assessed upon the owners of the lots named in the assessment aforesaid. It directs that the occupants also be assessed; but, in either case, only in proportion to the advantages which each may be deemed to acquire; and the assessors, under the sanction of their oaths, whereby they qualified, undertook to make the assessment directed by the said ordinance; yet, notwithstanding, their said assessment does not charge the expenses of said work to the owners and occupants of the houses and lots, in proportion to the advantages which each may be deemed to acquire, but said assessment is made upon another principle; it apportions the entire expense upon the owners of the lots in proportion to the lineal feet along the line of the street, in front of each man's premises. Wherefore, the plaintiffs claim that said assessment is void, and they are not bound thereby.

That the ordinance of June 24th, 1867, under which the said assessment purports to have been made, did not authorize payment for crosswalks of bridge stone. And the plaintiffs allege that the aforesaid assessment is illegal and void, because, without any authority therefor, there is awarded thereby the sum of $1037.40, or other large sum, to be paid to the contractor, for crosswalks of bridge stone, some of which bridge stone are laid in streets which cross Pearl street.

The plaintiffs further say, that there is not such proof that the work has been done, attached to the assessment list, as the general ordinances of 1866, page 199, require. There is not any affidavit of any inspector attached to the assessment list, to show that the work was " done according to the plan and specifications" of the contract. That there is a variance between the ordinance of June 24th, 1867, and the contract purporting to have been made to carry said ordinance into practical effect. That the contract is entire, and contracts for a work other and different from the work specified in and directed by the ordinance

aforesaid. That the contractor has not completed the work in compliance with the ordinance, or with the terms of the contract; that the work done commences with Wall street and terminates at Fulton street; across Fulton street, and thence to Beekman street, the contractor has not done anything; the contractor has omitted that part of the work contracted for under these words, "the crosswalks across the line of the proposed new pavement." Wherefore, the plaintiffs claim that the aforesaid assessment, which awards payment to the said contractor, as though he had completed the work required by the aforesaid ordinance, according to the terms and specifications of the contract, is void; and the plaintiffs are not bound thereby, or obligated to pay the money assessed by said assessment against the plaintiffs' aforesaid premises.

That the general ordinance of 1866, page 227, section 2, in the aforesaid ordinance of 1824, exempts the plaintiffs and their premises in Pearl street, from an assessment for repaving Pearl street; that said ordinance was amended, on or about the year 1836 or 1837, so as to except from the benefit of its provisions streets paved with "wooden pavement." That it is not lawful for the common council to cause a "wooden pavement" to be laid in Pearl street, at the expense of the owners of the lots, and thereby relieve the corporation from the expense of repaving and repairing Pearl street. Wherefore, the plaintiffs claim that the aforesaid assessment is void, and the plaintiffs are not bound thereby, or obligated to pay the money thereby assessed against their premises. That many of the most important and material facts above set forth do not appear in or by the assessment list or record of assessment sought to be set aside; but that many extrinsic facts are necessary to be proved in order to establish the illegality of said assessment; and unless the said assessment be set aside, or the plaintiffs otherwise adequately relieved, it will necessarily lead to a multiplicity of suits, and will

Tilden *v.* The Mayor &c. of New York.

result in great and irreparable injury to the plaintiffs; and that the apparent liens upon their aforesaid real estate, caused by the said assessment, are a cloud upon their title thereto, which ought in equity to be removed therefrom.

The plaintiffs further allege, that heretofore, and on or about the 6th of July, 1868, the plaintiffs presented, in writing, to the comptroller of the city of New York, the claim hereinbefore set forth, upon which this action is founded, for adjustment, and that at least twenty days have elapsed since such presentation of the claim. That on or about the 12th day of October, 1868, and after the expiration of the aforesaid twenty days, the plaintiffs made a second demand, in writing, upon the said comptroller, for the adjustment of the said claim, but the said comptroller has hitherto wholly neglected and refused to make any adjustment thereof. Wherefore, the plaintiffs demanded judgment against the defendants, and that the defendants, and the comptroller and other officers and servants of the defendants, abstain from collecting of the plaintiffs the said several sums of money assessed to be paid by the former owners of said premises; that the liens imposed by said assessment upon the plaintiffs' premises be discharged, and that the records in the office of the comptroller be so altered as that it will appear of record that the liens aforesaid have been discharged, and that the defendant and all its officers and agents may be perpetually enjoined and restrained from collecting said assessment, and from all proceedings for that purpose, and from selling the aforesaid lots of land of the plaintiffs, or of any of them, or taking any proceedings therefor on account of said assessment, and from doing any other act to the injury of the plaintiffs.

To this complaint the defendants demurred, on the grounds, 1. That the court has not jurisdiction. 2. That the complaint does not state facts sufficient to constitute a cause of action.

The court, at special term, ordered judgment for the defendants on their demurrer, dismissing the complaint, with costs; and the plaintiffs appealed.

*John McKeon*, for the appellants.

I. There are facts set forth in the complaint which are extrinsic to the assessment roll. These set forth, among other matters, violations of law, of ordinances relating to assessments for paving &c. streets; also the non-complianance of the contract with the ordinance, and that the work has not been done according to contract. The fact was stated that no bids were invited for the pavement. It does not appear that the pavement in question is patented.

II. The defendants' demurrer admits all the facts set forth in the complaint, as above stated, and also admits that the assessment laid for this pavement is an incumbrance and lien on the houses and lots assessed, and for the non-payment of which the same may be sold, and a certificate of the sale given to the purchaser, as appears by several acts of the legislature. (*Act of* 1824, § 1, *Valentine's Digest of Laws of the city of New York, p.* 467. *Act of April* 18, 1843, *Id. p.* 1238. *Act of* 1853, *Id. p.* 1273, § 6. *Id. p.* 1274, §§ 13, 14.)

III. The act of 1858, in relation to setting aside assessments for irregularity and fraud, is not the only remedy for aggrieved parties. (*Petition of John W. Lewis, decided by Justice Ingraham, MS. opinion. Petition of Beekman, decided by Sutherland, J.,* 11 *Abb.* 164. 19 *How.* 519.)

IV. The remedy by certiorari would only bring up the assessment roll, and none of the extrinsic facts which are set forth in the complaint, and which form the groundwork of the application of the plaintiffs, would appear.

V. The tax not being void on the face of the assessment roll, but its irregularity appearing by extrinsic facts, which are averred in the complaint, and admitted by the demur-

rer, the case comes within the doctrine of our courts, that if the tax or assessment complained of is valid on its face, or if the proof necessary to be made to enable a party to claim under it, will of itself show that it is void, then a bill to set aside the assessment, or as it may be called, to remove cloud on the title, will not lie. When, however, the claimant can establish a title by the record on the assessment, then there is·such a cloud on the title as the owner may legally ask to have removed by a court of equity. (*Heywood* v. *City of Buffalo*, 4 *Kern.* 534. *Scott* v. *Onderdonk*, 14 *N. Y. Rep.* 9. *Susquehanna Bank* v. *Supervisors of Broome Co.*, 25 *id.* 314. *Allen* v. *City of Buffalo*, 39 *id.* 386.) In this last case (published since Justice SUTHERLAND's judgment in this action) the Court of Appeals declares the doctrine, that where an assessment is improperly made, and where a certificate of sale of property under such assessment is made *prima facie* evidence of the title, such certificate of sale becomes a cloud on the title, and an action will lie· to remove it. (*See also Hatch* v. *City of Buffalo*, *Trans. of May* 19, 1869.)

VI. The complaint shows a case for relief in a court of equity; and the judgment of Justice SUTHERLAND, sustaining the demurrer, should be overruled, with costs.

*Wm. H. Leonard*, for the respondents.

I. This court will not take cognizance of an action in equity for relief against a tax or assessment erroneously or illegally imposed by a municipal corporation, nor restrain its collection. (*Mooers* v. *Smedley*, 6 *John. Ch.* 28. *The Mayor &c.* v. *Meserole*, 26 *Wend.* 132. *Wiggin* v. *The Mayor &c.*, 9 *Paige*, 9. *Livingston* v. *Hollenbeck*, 4 *Barb.* 9, 16. *Van Rensselaer* v. *Kidd*, *Id.* 17. *Bouton* v. *Brooklyn*, 15 *id.* 375. *Wilson* v. *The Mayor &c.*, 1 *Abb.* 4. *Chemical Bank* v. *The Mayor &c.*, 1 *id.* 79. *Douglas* v. *The Mayor &c.*, 2 *Duer*, 110. *N. Y. Life Ins. Co.* v. *Supervisors*,

4 *id.* 192. *Mu. Benefit Ins. Co.* v. *Supervisors*, 8 *Bosw.* 683. *Same* v. *Supervisors*, 33 *Barb.* 322. *Heywood*. v. *City of Buffalo*, 14 *N. Y. Rep.* 534. *Doolittle* v. *Supervisors*, 18 *id.* 155.)

There are but three exceptions to the application of the rule stated in this point. These are, to prevent multiplicity of actions, irreparable injury to the freehold, or, where extrinsic evidence is required, to establish the invalidity of the lien. (*Heywood* v. *The City of Buffalo, supra.*) There is no claim here that a multiplicity of actions will be avoided, or that any injury to the freehold will occur. There is an allegation that extrinsic evidence will be required as to many of the alleged facts; but an examination shows that no material fact is stated, not presented by the assessment roll, or by an inspection of the ordinances or the statutes. The other averments as to which extrinsic evidence might be required will be hereafter referred to. The case of *Allen* v. *The City of Buffalo*, (39 *N. Y. Rep.* 386,) cannot be regarded as a reversal of the unbroken chain of authority cited under this point. That case appears to have been decided in view of the very extraordinary provisions of the city charter applicable to assessments and sales therefor in the city of Buffalo. That charter directs the delivery of a certificate to the purchaser at sales for assessments, describing the premises, the date of sale, and the period for which sold; which is declared by the charter to be presumptive evidence of a legal assessment and valid sale. No such provision of law is to be found applicable to sales for assessments in the city of New York. None of the cases cited are referred to, criticised or doubted, nor does the Buffalo case purport to overrule the former decisions. The burthen of proof, by the Buffalo charter, is thrown upon the lot owner to establish the invalidity of the sale; thus changing the usual rule, and requiring extrinsic proof in every case, whenever a sale has taken place and a certificate been issued, as had been done in *Allen* v. *City of Buffalo*. The decision in

Allen's case relies for authority on that of *Scott* v. *Onderdonk*, (14 *N. Y. Rep.* 9,) and both are made upon the ground that extrinsic evidence will be required on the part of the plaintiff to establish his cause of action. *Heywood* v. *City of Buffalo*, reported in the same volume, decided by the same judges, at a subsequent term in the same year as that of *Scott* v. *Onderdonk*, goes upon the ground that extrinsic evidence will not be required; of course they are not in hostility. 1. A sale under a void or illegal assessment would not divest the plaintiffs' title. Their defense to an action to eject him would be perfect as against a suit by a purchaser acquiring title under such an assessment. 2. The assessment is the judgment of a subordinate tribunal; a court of equity will not review and correct the errors, mistakes and abuses of such "public jurisdictions." (*Heywood* v. *City of Buffalo, supra. The Mayor &c.* v. *Meserole, supra. Mooers* v. *Smedley, supra.*) 3. Assuming the assessment to be irregular, unauthorized and void, as alleged, the defense of the plaintiffs is clear and certain to any action to dispossess them, and there is no cloud upon their title, and no relief in equity required. They could also recover for money unjustly exacted, by an action at law. 4. This action demands an interference with the duties of public officers, and with public business and improvements. If the jurisdiction be entertained, it brings before the court an overwhelming mass of business from new and unusual remedies.

II. Several objections to the validity of the assessment require no extrinsic evidence; they appear from the assessment roll, the ordinances or the statutes. Those objections which require extrinsic evidence will be wholly unavailing to remove or impair the validity of the assessment when proven. They are, (1st.) That the street was formerly paved at the expense of the lot owners, from which it is assumed that a contract to repave at the expense of the corporation, arises under an ordinance of 1824.

(2d.) That the lot owners having paid annual taxes, a portion of which were applied to the streets generally, the corporation are bound to repave. (3d.) Violation of the city ordinances and charter requiring advertisement and proposals for the work, and forbidding expenditures exceeding appropriation. (4th.) The contractor has not fulfilled his contract. (5th.) Former pavement at the expense of the lot owners renders it unlawful to lay the *wooden* pavement, because streets paved with wood are excepted from the benefit of the ordinance of 1824, exempting from expense for repavement. These, if proven, are not available to the plaintiffs as grounds for relief. 1. No valid contract arises under the ordinance of 1824, exempting lot owners from expense for future repavement, when the street has been once paved at their expense. (*a.*) Under the act of 1813, (*Val. Dig.* 1190, § 175,) the common council are authorized to impose the whole or any part of the expense for any new pavement upon the lot owners. (*Matter of Lewis* v. *The Mayor &c.*, 35 *How. Pr.* 162, 168.) Hence, the release of the lot owners from future assessments, by the ordinance of 1824, was a voluntary surrender of the power and duty which were intrusted to, or imposed upon, the common council by law. It denies to future boards the right to exercise the power, or perform the duty, conferred for municipal legislation. As a contract, it is *nudum pactum,* for the lot owner was liable, under section 175, to be assessed to pay for the pavement, unconditionally, as well on the first occasion as the second; and the payment of the assessment for which the lot was liable was no consideration for a release from subsequent assessments. The want of capacity so to fetter future action is fully considered, and denied, in *The People* v. *Roper,* (35 *N. Y. Rep.* 629, 639;) *Goszler* v. *Corp. of Georgetown,* (6 *Wheat.* 593;) *Presbyterian Church* v. *The City of New York,* (5 *Cowen,* 538, 540.) (*b.*) Public policy forbids the ordinance of 1824. On sim-

ilar grounds all future taxes and assessments might be contracted away for present payment. (c.) The statute of 1837, chap. 160, referred to in the complaint, and enacting that all ordinances of the common council shall continue in force until repealed, gives no additional force to the ordinance of 1824. The ordinance of June, 1868, directing the assessment, is inconsistent with that of 1824, and is a repeal to that extent of the prior ordinance. 2. The payment of annual taxes assessed upon these lots, and the application of a portion of the tax to other streets, affords no valid objection to this assessment. (a.) The act of 1813, section 175, gives a continuing power which is not affected or repealed by any tax levy. The provisions of the charter on these subjects, section 38, relate to the expenditure of money from the city treasury. (*Matter of James Brown*, 1867, *MS. opinion of Judge Sutherland. Matter of Lewis* v. *The Mayor &c.*, 35 *How. Pr. Rep.* 162, 168.) Judge INGRAHAM says the provision does not apply where the expense is charged on the owners. So, also, the provisions of the charter respecting expenditures and appropriations have no application to this case. 3. The allegations respecting the violations of the city charter, in not advertising for proposals, and not obtaining or receiving bids for the performance of the work, will not, if proven, affect the validity of the assessment. (a.) The Nicholson pavement is a patented process, furnished only by the company named in the complaint, who alone have the right to use the process. (*Astor* v. *The Mayor &c., general term, opinion of Justice Ingraham, rep. in Trans. of Feb. 8, 1869. Harlem Gas Co.* v. *The Mayor &c. of New York*, 33 *N. Y. Rep.* 309. *Hobart* v. *City of Detroit*, 7 *Am. Law Reg.* 741.) 4. The plaintiffs cannot escape payment of the assessment because the contractor has violated his contract. (a.) The corporation may have an action against the contractor for damages, but that fact does not afford any ground of complaint against the assessments. There is

no allegation as to the extent or amount of damage. It may be very trifling. (*b.*) There is no allegation of fraud in respect to the judgment of the board of revision and correction confirming the assessment. The contractor, by reason of the confirmation, is entitled to payment as upon an acceptance of the work by the corporation. 5. The position that the former pavement of the street at the expense of the lot owners, renders it unlawful to lay the wooden pavement now, is inconsequential. If the lot owners have become exempt from the expense of future pavements or repairs, under the ordinance of 1824, that exemption will not be lost by the putting down of the wooden pavement at a subsequent period.

III. The objections not referred to in the second point, are such as require no extrinsic proof, and appear from the face of the assessment roll; as to these, the plaintiffs have a full and complete remedy by certiorari. As to the proper application of this remedy, see *Heywood* v. *City of Buffalo*, (14 *N. Y. Rep.* 540;) *Le Roy* v. *The Mayor &c. of New York*, (20 *John.* 430, 434, 438;) *Starr* v. *City of Rochester*, (6 *Wend.* 566, 567;) *The People* v. *Mayor of Brooklyn*, (9 *Barb.* 535, 540;) *Betts* v. *City of Williamsburgh*, (15 *id.* 255, 262;) *The People* v. *City of Rochester*, (21 *id.* 656, 664;) or by mandamus to strike out, &c. (*Adriance* v. *The Supervisors*, 12 *How. Pr.* 224, *and the numerous cases there cited.*) The objections to the validity of the assessment last mentioned are, (1st.) That the work should have been performed by the corporation, and not by the Croton board. (2d.) Not authorized by the tax levies of 1866 and 1867, and violating those acts requiring the work to be done by the street commissioner or street department; also, incurring liability forbidden by those acts. (3d.) The assessment is according to lineal feet, and does not charge the lot owners or occupants in proportion to advantage, as directed by the ordinance. (4th.) Providing for paying the contractors for crosswalks of bridge stone, not pro-

vided for by the ordinance. (5th.) The affidavits of the surveyor and inspector are not attached to the assessment roll. These objections must appear from the roll, and if any of them are valid, the assessment can be reached by certiorari. One valid objection is sufficient to operate the discharge of the lien, and the plaintiffs having thereby another sufficient remedy, the court, according to well settled rules, will refuse to take jurisdiction by action in equity.

IV. The court should also refuse jurisdiction over this case because the plaintiffs have another good and sufficient remedy under the statute of 1858. (*Session Laws of 1858, ch.* 338.) The grounds of objection stated in the complaint, whether requiring extrinsic evidence or not, involving fraud or legal irregularity, are clearly cognizable, and the relief is applicable under that act. The statute was adopted and made specially applicable to the city of New York, with the decisions of the court of equity cited under the first point, refusing to take jurisdiction of cases like the present directly in view of the legislature, and with the manifest intention of affording a cheap and easy remedy, without interfering with the rule adopted in equity. In pursuance of the rule refusing jurisdiction where the party has another good and sufficient remedy, suitors in the city of New York, in cases of this description, should be referred to the statute of 1858.

V. The plaintiffs have no separate and exclusive right to maintain this action. It should have been brought on behalf of the plaintiffs and all others similarly situated in respect to this assessment. (*a.*) The judgment demanded will not, if obtained, bar other actions to vacate this assessment. The assessment as to other owners of lots will remain, and the corporation will not be enabled to reassess the expense. (*b.*) The corporation is charged by statute with the duty of repairing and repaving streets, and authorized to impose assessments therefor on the lot

owners. (*Act of* 1813, § 175.) The performance of these duties ought not to be interfered with by a court of equity, on the invitation of the owners of a very small portion only of the lots affected, having a small comparative interest; because the work is of a public character, affecting the accommodation and interests of great numbers. (*c.*) The work has been performed, and the assessment confirmed by the board of revision and correction. A few private owners of seven lots seek to cast the whole expense of this improvement on the tax-payers at large, and do not seek relief from such portion only of the assessment as may be in excess of the proper sum. (*d.*) The object of the action is to escape the payment of an assessment, not to remove a cloud upon the title. (*e.*) The court will be overwhelmed with a mass of individual actions for relief from assessments of this nature, if their jurisdiction shall be retained. Courts have steadily refused to permit a few individuals to act as public champions in actions for relief from taxes and assessments.

*By the Court,* CARDOZO, J. It is perfectly settled that if a tax or assessment be void upon its face, or if the proof necessary to enforce it will show its invalidity, a bill in equity to restrain its collection cannot be sustained. *Allen v. The City of Buffalo,* (39 *N. Y. Rep.* 386,) contains nothing in opposition to or inconsistent with this doctrine. That was a case falling plainly within the rule, where the invalidity would neither appear on the face of the assessment nor in the proofs necessary to enforce or sustain it; because by statute the tax or assessment, and the proceedings to impose and collect the same, were declared to "be deemed to be valid, regular and conclusive, subject to the right of any party to show to the contrary by *affirmative evidence.*" As no such provision of law exists as respects assessments in this city, that case has no application here.

The only question, after what was said by the court on

Tilden *v.* The Mayor &c. of New York.

the argument, remaining to be considered, is whether the corporation ordinance of 1824, relied on by the plaintiffs, makes such a case of contract between the city and the owners of the lots in question, on Pearl street, as prevents the city from enforcing the assessment which the plaintiffs seek to avoid. Without inquiring as to the power of the common council to make such a contract as the plaintiffs claim the ordinance of 1824, followed by the payment by the owners of the Pearl street lots of the cost of paving that street, created, or the effect of it if made, I think it enough to say that the supposed contract lacks one essential element of a valid agreement, viz., a consideration. By the statute of 1813 (*ch.* 86) the mayor, aldermen and commonalty were authorized, among other things, to direct the paving of streets, and to assess the expense upon the owners or occupants of the houses and lots benefited, (§ 175.) Under this provision the owners could have been compelled to pay the expense of the pavement laid down in 1824, and therefore the promise of the corporation to bear the expense of future repairs and pavements was without consideration. The owners lost nothing by what occurred; they simply paid what by law they could have been obliged to pay, and it has never been held that the performance of a legal duty, or the payment of a legal liability, furnished any consideration to support a promise.

The judgment below was right, and should be affirmed. The case of *Ely* v. *The Mayor &c.* should be disposed of in the same manner.

Judgment affirmed.

[NEW YORK GENERAL TERM, April 4, 1870. *Ingraham, Geo. G. Barnard* and *Cardozo,* Justices.]